**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JOHN RAGGIO, <br><br> Plaintiff, <br><br> v. <br><br> JACINTOPORT INTERNATIONAL, LLC, and SEABOARD MARINE, LTD., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. No. 1:10-cv-01908 (BJR) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**RELATOR JOHN RAGGIO MOTION FOR AWARD OF ATTORNEYS' FEES,**
**COSTS, AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Fed. R. Civ. P. 54(d) and D.D.C. Loc. Civ. R. 54.2(a), Relator John Raggio submits this Motion for an Award of Attorneys' Fees, Costs, and Expenses under 31 U.S.C. § 3730(d)(1) of the False Claims Act.  Relator seeks an award of $451,211.17 in reasonable attorneys' fees and $2,429.42 in costs and expenses, for a total amount of $453,640.59.  In support of the requested award, Relator attaches the following: (1) Declaration of Timothy B. Shea of the law firm of Nemirow, Hu & Shea reflecting billing hours and rates for Timothy B. Shea ("Shea Decl.") and Exhibits A through C; (2) Declaration of Megan C. Rahman of the law firm of Troutman Sanders LLP reflecting billing hours and rates for attorneys Mark E. Nagle, Bryan M. Haynes, Megan C. Rahman, Elizabeth S. Gere, Michael H. Higgins, Stanley W. Hammer, and Laura Anne Kuykendall, each from the law firm of Troutman Sanders LLP ("Rahman Decl.") and Exhibits One through Two; and, (3) Declaration of Thomas L. Mills, former managing partner at Winston & Strawn, regarding the prevailing rates in the legal community of Washington, D.C. ("Mills Decl.").

Pursuant to D.D.C. Loc. Civ. R. 7(m), Relator certifies that counsel for the parties conferred about the issues raised in Relator's fee motion in an attempt to resolve them without resort to the Court. The parties were unable to reach an agreement, and the Defendants have indicated that they intend to oppose Relator's fee motion.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In April 2007, Jacintoport International LLC ("Jacintoport"), a private port facility located in Houston, Texas, entered into a warehousing and logistics services contract with the United States Agency for International Development ("USAID"), contract number TRN-C-00-07-00044-00 (the "Contract"). *See* Shea Decl. ¶ 3. Under the Contract, Jacintoport received, stored, and re-delivered food commodities ("prepositioned goods") at its Houston facilities so that those goods would be readily available for the United States and its partners to send as emergency humanitarian food aid to needy countries around the world. *Id*. Under the Contract, Jacintoport charged certain services directly to USAID. *Id*. The Contract also capped other costs that Jacintoport charged directly to third parties, including ship owners, and which the USAID ultimately bore and reimbursed. *Id*.

The Relator, John Raggio, worked for Sealift, Inc. ("Sealift"), one of the ocean carriers responsible for transporting the humanitarian food aid cargoes stored at and loaded from Jacintoport's Houston facility. *Id*. ¶ 4. In August 2010, after learning about the stevedoring rate caps contained in Schedule B of the Contract, Mr. Raggio and Washington, D.C. counsel for Sealift, Timothy B. Shea, initiated discussions with Mark E. Nagle of Troutman Sanders LLP ("Troutman Sanders") to discuss Mr. Nagle and Mr. Shea providing legal representation in a potential False Claims Act claim against Jacintoport and its related companies ("Jacintoport").

---

[1] This Memorandum presumes familiarity with the parties and factual and procedural background. As this Court is well aware, the parties have actively litigated this case for over four years, engaging in extensive motions practice and eventually settling on the eve of trial.

*Id.* Subsequently, on November 5, 2010, Mr. Raggio filed this lawsuit under seal, alleging that Jacintoport and Seaboard Marine, Ltd. ("Seaboard" and collectively with Jacintoport, "Defendants") charged carriers rates in excess of the Schedule B caps, causing the submission of false and inflated claims to USAID. *See* Relator's Complaint [ECF No. 1]. Relator also provided a detailed Confidential Disclosure Statement to the United States Department of Justice with accompanying exhibits in February 2011. *See* Shea Decl. ¶ 7. During 2010, 2011, and 2012, Relator's counsel and Relator provided assistance to the United States during its investigation of the sealed Complaint, including, *inter alia*, meeting with the Government, producing documents to the Government, and continuing to investigate and supplement the Relator's statement and the sealed Complaint. *Id.* Upon completion of the United States' investigation of the sealed Complaint, the United States filed its Complaint in Intervention on October 19, 2012. *See* United States' Complaint in Intervention [ECF No. 15]. The United States alleged that, as a result of Jacintoport[2] charging stevedoring rates in excess of the Contract's rate caps, Jacintoport caused the submission of false and inflated claims to USAID, in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. *Id.*

On November 20, 2012, Relator filed his First Amended Complaint against Jacintoport [ECF No. 21]. On December 18, 2012, Jacintoport answered Relator's Complaint and counterclaimed against Relator and Sealift, alleging violations of the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. §§ 1961-68, ("RICO"), the common law tort of abuse of process, and breach of the implied covenant of good faith and fair dealing ("Counterclaims"). *See* Answer and Counterclaim [ECF No. 24]. As a result of Jacintoport's filing, Relator's counsel was forced to defend against the Counterclaims and, on February 22, 2013, Relator and Sealift moved to dismiss Jacintoport's Counterclaims against them [ECF No. 32]. Due to the

---

[2] The United States' Complaint in Intervention did not name Seaboard as a defendant [ECF No. 15].

subsequent filing of Amended Counterclaims and extensive motions practice surrounding the same, Relator's counsel was required to expend considerable time responding to issues relating to the Amended Counterclaims raised by Defendants.  *See* Shea Decl. ¶ 10; Rahman Decl. ¶ 8.

Ultimately, the Court severed the remaining Amended Counterclaims and stayed them pending disposition of Relator's FCA claims [ECF No. 64].  Thereafter, Relator's counsel provided the Government with assistance in reviewing and filing cross-motions for summary judgment in 2014 and 2015, including securing a key affidavit from a Sealift officer, and responding to written discovery and other pre-trial motions.  *See* Shea Decl. ¶ 11; Rahman Decl. ¶ 8.  On December 7, 2015, the Court denied the Defendants' motion for summary judgment and granted in part the United States' cross-motion for summary judgment.  *See* Order at 2 [ECF No. 121].

The Court's trial schedule required the parties, *inter alia*, to prepare a joint pre-trial statement, file pre-trial exhibit lists, file motions *in limine*, file objections to exhibits and responses thereto, and identify all agreed and proposed stipulations of fact.  While the United States took the laboring oar, Relator's counsel took the lead on drafting and researching several motions *in limine*, actively participated in conference calls with counsel, and reviewed all filings. *See* Shea Decl. ¶ 13; Rahman Decl. ¶ 8.

On March 24, 2016, almost six years after Relator filed his Complaint, the parties filed a notice of settlement in principle and motion to stay the trial, scheduled to begin on April 18, 2016 [ECF Nos. 136–37].  On August 1, 2016, the United States and Relator advised the Court of the execution of a final settlement agreement among the United States, Relator, and the Defendants [ECF No. 142].  Under the terms of the settlement agreement, the Defendants agreed to pay the United States the sum of $1,075,000, and the United States agreed to pay Relator the

sum of $215,000, representing 20% of the proceeds.  Shea Decl. ¶ 14; Settlement Agreement at

3, attached as Exhibit B to Shea Decl.  The settlement agreement expressly reserved Relator's

claims for attorneys' fees and costs.  *See* Joint Stip. of Dismissal [ECF No. 142]; Settlement

Agreement at 4.[3]  On August 4, 2016, the Court dismissed the matter with prejudice and ordered

Relator to submit his Petition for Attorneys' Fees and Costs not later than August 19, 2016.

[ECF No. 143].  Pursuant to the August 4, 2016 Order, on August 19, 2016, Relator filed his

Motion for Attorneys' Fees, Costs, and Expenses and this supporting memorandum.

### ARGUMENT

Because the Government has prevailed, Relator is entitled to a mandatory award of

reasonable attorneys' fees, costs, and necessary expenses.  Where, as here, "the Government

proceeds [under the FCA] with an action brought by a person . . . such person shall . . . receive at

least 15 percent but not more than 25 percent of the proceeds . . . .  *Any such person shall also*

*receive an amount for reasonable expenses which the court finds to have been necessarily*

*incurred, plus reasonable attorneys' fees and costs*."  31 U.S.C. § 3730(d)(1) (emphasis added).

"This provision ensures that the attorneys' fees and costs incurred by any prevailing relator are

reimbursed by the violators of the [FCA]."  *United States ex rel. Miller v. Bill Harbert Int'l*

*Constr., Inc.*, 786 F. Supp. 2d 110, 116 (D.D.C. 2011), *subsequent proceeding at United States*

*ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 865 F. Supp. 2d 1 (D.D.C. 2011).  In this case,

the United States "proceed[ed]" with the action brought by Mr. Raggio as relator, and he

"receive[d]" 20% of the proceeds.  § 3730(d)(1).  Accordingly, Relator satisfies the prerequisites

of § 3730(d)(1), entitling him to "also receive" "reasonable expenses . . . plus reasonable

attorneys' fees and costs."  *Id*.

---

[3] The Defendants have also reserved their counterclaims against Relator and Sealift under the Agreement.

Importantly, a party need not obtain favorable outcomes on every claim or argument to be entitled to fees; instead, a prevailing party need only succeed on any significant issue in the litigation which achieves some of the benefit the party sought in bringing suit.  *United States ex rel. Miller v. Bill Harbert*, 786 F. Supp. 2d at 116 (citing *Raton Gas Transmission Co. v. FERC*, 891 F.2d 323, 327 (D.C. Cir. 1989).  In this case, no dispute exists that Relator succeeded on significant issues in the litigation and achieved the benefit he sought in bringing the suit.  Thus, § 3730(d)(1) entitles Relator to attorneys' fees.

## I.      Relator's Requested Attorney's Fees are Reasonable.

Relator is entitled to "reasonable attorneys' fees."  31 U.S.C. § 3730(d(1).  For the purpose of calculating reasonable fees under § 3730(d)(1), a strong presumption exists that the product of the hours reasonably expended on the litigation times a reasonable hourly rate, commonly referred to as the "lodestar figure," yields a reasonable attorney's fee.  *Miller v. Holtzmann*, 575 F. Supp. 2d 2, 11 (D.D.C. 2008) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)), *remanded sub. nom. United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, Nos. 09-5075, 09-5076, 09-5077, 09-5078, 2010 U.S. App. LEXIS 26536, at *2 (D.C. Cir. Dec. 30, 2010), *modified sub nom. United States ex rel. Miller v. Bill Harbert*, 786 F. Supp. 2d at 110.  Thus, when resolving Relator's fee petition, this Court must determine what constitutes a reasonable hourly rate for the attorney services rendered and the amount of hours that were reasonably expended on the litigation.  *Miller*, 575 F. Supp. 2d at 11.

### A.      Relator's Requested Hourly Rates Are Reasonable Because They Reflect the Prevailing Market Rates in the Relevant Community.

"[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience and reputation.'"[4] *Id.* at 11–12 (quoting *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)); *see also Blum*, 465 U.S. at 895 ("Reasonable fees are to be calculated according to the prevailing market rates in the relevant community.") (internal quotation marks omitted). The burden rests with the fee petitioner to produce satisfactory evidence that the requested rates align with prevailing rates, usually through the attorney's own affidavit as to customary billing rates for paying clients for similar work and affidavits from other attorneys regarding prevailing rates in the relevant community. *Miller*, 575 F. Supp. 2d. at 12. The fee petitioner should provide the court with specific evidence that hourly rates align with those rates prevailing in the legal community in order to be awarded fees at the requested rates. *Id.* at 11–12.

>        1.    **Troutman Sanders' and Nemirow, Hu & Shea's Established Billing Rates Represent the Market Rate for Their Attorneys and Hence Are Presumptively Reasonable.**

For lawyers with established billing rates, those rates are highly relevant to, if not dispositive of, the Court's inquiry into the prevailing market rates. *See Nat'l Assoc. of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C.Cir. 1982) ("[T]he actual rate that the applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate."). It is well-established in the D.C. Circuit that a firm's established billing rates are presumptively reasonable for the purposes of an attorneys' fee award. *Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1984), *overruled on other grounds by Save Our*

---

[4] The "relevant community is the one in which the district court sits." *Donnell v. United States*, 682 F.2d 240, 251 (D.C. Cir. 1982). *Accord Salazar v. District of Columbia*, 30 F. Supp. 3d 47, 62 (D.D.C. 2014) ("[T]he general rule is that counsel is compensated based on the rates paid in the community where the district court is located."); *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. E.P.A.*, 169 F.3d 755, 757–58 (D.C. Cir. 1999). An attorney's local rate should apply: (1) when an out of town attorney is used because of special expertise or the unwillingness of local counsel to take the case; or, (2) where out of jurisdiction lawyers would receive substantially higher rates than they ordinarily command for work done almost exclusively in their home territory. *Salazar*, 30 F. Supp. 3d at 62, 63 (compensating Massachusetts lawyer at D.C. rate for case litigated in D.C.). Here, the rates of counsel for Relator, even those that practice in Richmond, Virginia, should be judged against the rates of the legal community in the District of Columbia, where this Court sits.

*Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988).  As the D.C. Circuit has

explained:

> [W]hen fixed market rates already exist, there is no good reason to tolerate the substantial costs of turning every attorneys fee case into a major ratemaking proceeding.  *In almost every case, the firms' established billing rates will provide fair compensation*. The established rates represent the opportunity cost of what the firm turned away in order to take the litigation; they represent the lawyers' own assessment of the value of their time.

*Id.* at 24; *see also Sierra Club. v. EPA*, 769 F.2d 796, 808 (D.C. Cir. 1985) (citing *Laffey*, 746

F.2d at 24, and noting that "where firm receiving fees is a for-profit partnership with a long

history of billings to private customers, the reasonably hourly rate is the firm's historical billing

rate"); *Wilcox v. Sisson*, No. Civ. A. 02-1455, 2006 U.S. Dist. LEXIS 33404, at *8–9 (D.D.C.

May 25, 2006) ("The rates charged by counsel for the winning party are presumptively

reasonable if they are the same rates that counsel customarily charge other fee-paying clients for

similar work.").   This presumption allow courts to avoid "the essentially impossible task of

selecting one rate over another from a wide range of market rates, . . . and allows the parties and

the court to avoid a second major litigation" over the fees.  *Laffey*, 746 F.2d at 18 (internal

quotation marks omitted).

Troutman Sanders' and Nemirow, Hu & Shea's standard billing rates, which both firms

typically charge their clients, are therefore presumptive evidence as to reasonable rates for the

services provided in this case. *See Wilcox*, 2006 U.S. Dist. LEXIS 33404, at *8–9; *see also* Decl.

Thomas Mills ¶ 6.[5]  The requested rates for Mr. Shea are set forth in Exhibit C to the Shea Decl.

The requested rates for Troutman Sanders are set forth in Exhibit One to the Rahman Decl.

---

[5] Mr. Mills has been practicing law in D.C. for over forty years.  Mills Decl. ¶ 1(b).  During this time, he has been involved in the task of setting hourly rates for firm attorneys and has been involved in numerous complex litigation matters, including maritime regulatory litigation.  *Id.* at ¶ 1.  Mr. Mills understands quite well the D.C. legal market,

In view of the delay in fee recovery, Relator is entitled to recover all fees at Troutman

Sanders' and Nemirow, Hu & Shea's current billing rates, rather than rates when the work was

actually performed.  *Miller*, 575 F. Supp. 2d at 18–19 (D.D.C. 2008).  Given the history of the

case, it is plain that a delay in the recovery of Relator's fees exists.  "[I]t is acceptable to use

current market rates rather than historic rates, as a convenient method of compensating

prevailing parties for a delay in receiving payment."  *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71

n.2 (D.D.C. 2006) (citation omitted).  This method of compensating prevailing parties for delay

has been approved by this Court.  *See Miller*, 575 F. Supp. 2d at 21; *see also Murray v.

Weinberger*, 741 F.2d 1423, 1433 ("Current market rates have been used in numerous cases to

calculate the lodestar figure when the legal services were provided over a multiple-year period

and when use of the current rates does not result in a windfall for the attorneys.").

### 2. Troutman Sanders' and Nemirow, Hu & Shea's Rates are Within Those Prevailing in the Community for Lawyers of Reasonable Comparable Skill, Experience, and Reputation.

To ensure that the requested rates are in line with those prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience, and reputation, the D.C.

Circuit permits this Court to "bracket" a firm's customary billing rates "by establishing that it

falls within the rates charged by other firms for similar work in the same community."  *Laffey*,

746 F.2d at 24–25.  So long as the firm's rate falls within the rate brackets, the firm's rate

constitutes the market rate for purposes of calculating the lodestar.  *Id.* at 25.  As explained

below, the lawyers who worked on this case are highly qualified and their standard hourly rates

are within the range of rates charged by lawyers with similar qualifications practicing at large

firms in the District of Columbia.

---

the dynamics of practicing litigation at a larger firm, and what it takes to litigate a complex civil case involving maritime regulation and government contracting. *Id.*

Relator's attorneys are able to command their customary billing rates in the legal market due to their skill, experience, and reputation.  Each attorney who worked on this matter is highly qualified and possesses a strong reputation.  *See, e.g.,* Mills Decl. ¶ 6(b), (c).  The declarations and documentation from Ms. Rahman and Mr. Shea detail the background and relevant experience of each attorney who worked on this case.[6]  As demonstrated in the declarations, Relator's attorneys are of exceptional skill and expertise.  *See, e.g.,* Rahman Decl. ¶¶ 3-4,13; Shea Decl. ¶ 1.

### 3.   Troutman Sanders' and Nemirow, Hu & Shea's Requested Established Billing Rates are Within Those Rates Prevailing in the Community.

In order to demonstrate that a firm's rates accord with prevailing market rates in the community, the D.C. Circuit permits plaintiffs to point to "their own survey of prevailing market rates in the community."  *Covington v. D.C.*, 57 F.3d 1101, 1109 (D.C. Cir. 1995).  Using this methodology, Troutman Sanders' and Nemirow, Hu & Shea's established billing rates are in line with those prevailing in the community.

As an initial matter, the "prevailing rate" is not simply an average of all law firm rates in the locality, but a rate in the "same marketplace."  *Wilcox*, 2006 U.S. Dist. LEXIS 33404, at *15. The marketplace of large law firms of more than 100 lawyers "tolerates and pays higher hourly rates to lawyers – partners and associates."  *Id*.  Troutman Sanders employs more than 650 attorneys across sixteen offices located in the United States and abroad.  Rahman Decl. ¶ 4. Nemirow, Hu & Shea, a specialized firm in Washington, D.C. which regularly litigates complex

---

[6] During the six year history of this case, several Troutman Sanders attorneys responsible for representing Relator left the firm, which accounts for the higher number of timekeepers.  For example, Mr. Hammer, an associate working with Ms. Rahman, began working on this case in November 2012 and ceased working on it in August 2015 when he left the firm.  *See* Rahman Decl. ¶ 13.  Ms. Kuykendall, another associate, began working on this case in 2016 after joining the firm in September 2015.  *Id.*  Mr. Nagle, Ms. Gere, and Mr. Higgins all left the firm in 2012. *Id.*

disputes involving commercial and government contracting and litigation.   As explained in *Wilcox*, the reason the market accepts relatively higher rates is because of the high quality of legal services and excellent qualifications of its attorneys.  *Id.* at *8 n.2.  The Troutman Sanders and Nemirow, Hu & Shea attorneys possess such excellent qualifications.

Mr. Mills, who is knowledgeable about rates generally in the D.C. market, opines that "the billing rates for lawyers actually billed by the two firms representing Relator, Nemirow, Hu & Shea and Troutman Sanders, for the period 2012 to the conclusion of the case . . . are well within, possibly at the lower edge, of the market range for firms with maritime and False Claims Act expertise in the Washington, D.C. legal community."  Mills Decl. ¶ 6.  Mr. Mills explained that the rates for the partners and associates who worked on this case are all well within or below prevailing market rates.  *Id*.   Accordingly, Mr. Mills concluded that the rates charged by Relator's counsel during the representation were "well within the bounds of reasonableness." *Id.* ¶¶ 5-6.

**B.      The Number of Hours Requests by Relator Was Reasonably Expended in Litigating this Matter.**

Relator seeks fees for a reasonable number of hours expended in litigating this matter. Regarding the reasonableness of the number of hours expended, the petitioner must submit evidence that justifies the hours claimed to have been worked.  *Miller*, 575 F. Supp. 2d. at 21 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* (citing *Hensley*, 461 U.S. at 433).  Nevertheless, the fee petition "need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney." *Id.* at 21 (alterations in original) (quoting *Nat'l Ass'n of Concerned Veterans v Sec'y of Def.* 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  Rather, "the application must be sufficiently

detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Id.* (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327).

As Judge Lamberth summarized in *Miller*, "[c]ompensable time should not be limited to hours expended within the four corners of the litigation." *Id.* at 22 (alteration in original) (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1335).  The fee petitioner need only show that the compensable hours were "expended in pursuit of a successful resolution of the case in which fees are being claimed." *Id.* (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1335).  "[A] reduction in fee is appropriate only when the non-prevailing claims are truly fractionable." *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891–92 & n.8 (D.C. Cir. 1980)). Further, a relator also may recover attorneys' fees from for time devoted to obtaining such fees. *Miller*, 575 F. Supp. 2d at 27 (citing *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 367 n.21 (D.D.C. 1983) ("It is well settled that hours reasonably devoted to negotiating and/or litigating a statutory fee award are compensable."), *rev'd in part on other grounds*, 740 F.2d 1071 (D.C. Cir. 1984)).  Likewise, "the FCA 'contemplates [] continued participation by a relator after the government intervenes in a qui tam action.'" *Id.* at 40 (alteration in original) (citing *United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 U.S. Dist. LEXIS 26986, at *47-48 (D.S.C. May 23, 2002)).  Relator's counsel have heeded the Supreme Court's instruction to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  Relator's counsel have exercised appropriate billing judgment in their requested time and have made additional reductions of valuable time in the interest of avoiding protracted litigation over fees. *See* Rahman Decl. ¶ 12.

Exhibits C and One to the Declarations of Mr. Shea and Ms. Rahman, respectively, contain summaries, followed by a detailed printout, of the services and associated hours performed by Nemirow, Hu & Shea and Troutman Sanders from 2010 to date and for which Relator seeks compensation through the present motion.  The total Nemirow, Hu & Shea fees for which Relator seeks reimbursement is $154,350.00, representing a total of 228.66 hours.  *See* Exhibit C.  Nemirow, Hu & Shea also seeks an addition $9,450 for fees incurred in drafting and preparing the fee petition.  *See* Exhibit D.  The total Troutman Sanders fees for which Relator seeks reimbursement is $287,411.17, representing a total of 586.6 hours.  *See* Exhibit One.  Of that, $17,872.50 in fees is related to drafting and preparing this Motion for Fees and/or discussions with the Defendants' counsel about the same.  *See* Rahman Decl. ¶ 10.

Given the six year history of the case, including extensive motions practice and trial preparation, and the time required of Relator's counsel, the number of requested hours is reasonable.

- From the commencement of the case in 2010 through calendar year 2011, counsel were involved in:  (1) reviewing the merits of the claim; (2) preparing the sealed Complaint and detailed Confidential Disclosure Statement for the Government; (3) assisting the Government in its investigation; and, (4) conducting a substantial amount of research and assessment of the application of various FCA requirements to the USAID program and the proper measure of damages.  *See* Shea Decl. ¶¶ 5, 7; Rahman Decl. ¶ 5.  During this period, from 2010 to 2011, Mr. Shea billed approximately 100 hours and Troutman Sanders billed approximately 281.1 hours.  *See* Shea Decl. ¶ 17 and Exhibit C; Rahman Decl., Exhibit One.

- In October 2012, the United States filed its Complaint in Intervention [ECF 15]. In 2012, counsel for Relator continued to engage in numerous communications with the Government regarding the investigation of the case and the filing of the United States' Complaint in Intervention.  *See* Shea Decl. ¶ 7.  For the calendar year 2012, accumulated time and fees were approximately 8 hours for Timothy B. Shea and 48.8 hours for Troutman Sanders.  *See* Shea Decl. ¶ 17 and Exhibit C; Rahman Decl. ¶¶ 6, 8 and Exhibit One.

- In 2013, Relator's counsel spent considerable time responding to the Defendants' Counterclaims and Amended Counterclaims against him, including extensive

13

motions practice.  *See* Shea Decl. ¶ 10; Rahman Decl. ¶ 8.  As a result, for the calendar year 2013, accumulated time and fees were approximately 70 hours for Timothy B. Shea and 175.6 hours for Troutman Sanders.  *See* Shea Decl. ¶ 17 and Exhibit C; Rahman Decl. ¶ 8 and Exhibit One.

- In 2014, the parties exchanged initial disclosures and Relator responded to discovery requests from the Defendants.  *See* Rahman Decl. ¶ 8.  For the calendar year 2014, accumulated time and fees were approximately 16 hours for Timothy B. Shea and 18.6 hours for Troutman Sanders.  *See* Shea Decl. ¶ 17 and Exhibit C; Rahman Decl. ¶ 8 and Exhibit One.

- In 2015, Relator assisted the United States with information and affidavits in support of its motion for summary judgment.  *See* Shea Decl. ¶ 11; Rahman Decl. ¶ 8.  For the calendar year 2015, accumulated time and fees were approximately 22 hours for Timothy B. Shea and 7.8 hours for Troutman Sanders.  *See* Shea Decl. ¶ 17 and Exhibit C; Rahman Decl. ¶ 8 and Exhibit One.

- For the calendar year 2016, Relator reviewed, evaluated, and conferred with the Department of Justice regarding trial preparation, including the government's pretrial statement, voir dire, jury forms, exhibits, and prospective testimony, and took the lead in the preparation of and response to certain motions *in limine*.  *See* Shea Decl. ¶ 13; Rahman Decl. ¶ 8.  For the calendar year 2016, accumulated time and fees were approximately 12 hours for Timothy B. Shea, not included the time spent on this Motion for Fees, and 15 hours for Troutman Sanders, not including the time spent on this Motion for Fees.  *See* Shea Decl. ¶ 17 and Exhibit C; Rahman Decl. ¶ 8 and Exhibit One.

Given the lengthy litigation involved in this matter, Relator's requested hours are reasonable.

## II.      Relator's Costs and Expenses Are Reasonable.

The FCA not only awards "reasonable attorneys' fees" but also "reasonable expenses" that were "necessarily incurred" plus reasonable costs.  31 U.S.C. § 3730(d)(1).  Additionally, Rule 54(d) entitles Relator to recover his reasonable costs and expenses.  The D.C. Circuit permits recovery for reasonable out of pocket expenses incurred by attorneys that are normally passed on to a fee-paying client.  *Cf. Laffey*, 746 F.2d at 30 (noting that § 1988 award for attorney's fee included authority to award reasonable out of pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal

14

services).  Reasonable expenses and costs include "out-of-pocket litigation expenses for postage,

photocopying, telephone calls, facsimile transmissions, messengers, local travel, Westlaw, [and]

transcripts . . . ."  *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 16–17 (D.D.C. 2008).

Moreover, the FCA has a specific provision for "reasonable expenses," which can permit

recovery of expenses other than attorneys' fees and costs.  *See, e.g., United States ex rel.*

*Garibaldi*, 46 F. Supp. 2d 546, 567 (E.D. La. 19999), *vacated on other grounds*, 244 F.3d 486

(5th Cir. 2001).

The costs sought by Relator in this matter total $2,429.42 and fall into the following

general categories of filing fees, courier charges database and computerized research.  The costs

are detailed and summarized in Exhibit Two to Ms. Rahman's Declaration.  Troutman Sanders

seeks $2,429.42 in costs.  Mr. Shea does not seek any costs.[7]  The costs claimed by Relator are

typical of the costs that law firms incur in this type of complex and protracted litigation and costs

that law firms reasonably charge to clients separately and not part of their overhead expenses.

## CONCLUSION

For the reasons stated herein, Relator John Raggio respectfully requests that the Court

grant his motion for an order pursuant to 31 U.S.C. § 3730(d)(1) that the Defendants shall pay

him the sum of $453,640.59 in fees and $2,429.42 in costs.  A proposed order is attached.

---

[7] Relator will also be seeking the recovery of the amount charged by Mr. Mills, who has been engaged at a cost of $5000 to date as an expert on the hourly rates for Washington D.C. firms.  *See* Shea Decl. ¶ 21; Mills Decl. ¶ 7. Realtor will provide a final invoice for Mr. Mills' charges with its Reply Brief.

Date:   August 19, 2016                    Respectfully submitted,

                                           _____/s/_____
                                           Timothy B. Shea, D.C. Bar No. 234005
                                           Nemirow Hu & Shea
                                           1900 L Street, NW
                                           Suite 303
                                           Washington, D.C. 20036
                                           (202) 835-0300
                                           Facsimile:  (888) 522-4519
                                           timbshea@aol.com

                                           Bryan M. Haynes, D.C. Bar No. 464574
                                           Troutman Sanders LLP
                                           1001 Haxall Point
                                           Richmond, VA 23219
                                           (804) 697-1200
                                           Facsimile:  (804) 698-6042
                                           bryan.haynes@troutmansanders.com

                                           Megan C. Rahman (*pro hac vice*)
                                           Troutman Sanders LLP
                                           1001 Haxall Point
                                           Richmond, VA 23219
                                           (804) 697-1200
                                           megan.rahman@troutmansanders.com

                                           *Attorneys for Relator John Raggio*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August, 2016, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to the registered users.

                                           _____/s/_____
                                           Timothy B. Shea, D.C. Bar No. 234005
                                           Nemirow Hu & Shea
                                           1900 L Street, NW, Suite 303
                                           Washington, D.C. 20036
                                           (202) 835-0300
                                           Facsimile:  (888) 522-4519
                                           timbshea@aol.com

16