IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*     )<br>    JOHN RAGGIO,                    )<br>                                    )<br>        Plaintiff,                )<br>                                    )<br>        v.                          )<br>                                    )<br>                                    )<br>JACINTOPORT INTERNATIONAL, LLC,   )<br>and                                         )<br>SEABOARD MARINE, LTD.,          )<br>                                    )<br>        Defendants.           )<br>_____ ) | Civ. No. 1:10-cv-01908 (BJR) |

## Declaration of Timothy B. Shea

I, Timothy B. Shea, hereby declare:

1.  I am a member of the bars of District of Columbia, Massachusetts and Maryland. Over a period of some 18 years I worked as a trial attorney, senior litigation counsel and supervisory attorney in charge of maritime assistance programs for U.S.-flag vessels at the U.S. Department of Transportation, Maritime Administration. Thereafter, for four years I was Vice President and General Counsel of a government corporation, the Legal Services Corporation. Since 1991 I have been private practice in Washington D.C. primarily representing owners, operators and charterers involved in maritime projects with a special emphasis on government projects and contracting. Administrative advocacy, disputes and litigation relating to carriage of in-kind food aid, a major source of cargo to U.S.-flag carriers, has been a particular specialty of mine for more than 30 years. A copy of my biography is attached as Exhibit A.

2. I have represented Sealift, Inc., a ship operator with a long history of participation in government-sponsored food aid programs and military contracting, in connection with its contracting activities for more than 20 years.

3. In April 2007, Jacintoport International LLC ("Jacintoport"), a private port facility located in Houston, Texas, entered into a warehousing and logistics services contract with the United States Agency for International Development ("USAID"), contract number TRN-C-00-07-00044-00 (the "Contract") under which, Jacintoport received, stored, and re-delivered food commodities ("prepositioned goods") at its Houston facilities so that those goods would be readily available for the United States and its sponsored grantees to send as emergency humanitarian food aid to needy destinations around the world. The Contract also capped costs that Jacintoport charged directly to third parties, including shipowners, which the USAID ultimately bore.

4. The Relator, John Raggio, worked for Sealift, one of the major ocean carriers engaged in transporting the humanitarian food aid cargoes stored at and loaded from Jacintoport's Houston facility. In the summer of 2010, after learning about the stevedoring rate caps contained in the Contract, at the request of Mr. Raggio, I initiated discussions with Mark E. Nagle of Troutman Sanders LLP ("Troutman Sanders") to provide legal representation in a potential False Claims Act ("FCA") claim against Jacintoport International LLC and its related companies ("Jacintoport"). I had worked with Mr. Nagle when he was an Assistant United States Attorney and because he had been appointed the Chief of the Civil Division in the D.C. U.S. Attorney's office, I knew that he had invaluable experience with the FCA, government assistance programs and Department of Justice policy with respect to intervention in FCA cases.

5. Mr. Nagle with my assistance devoted considerable time and effort analyzing the basis for an FCA claim against Jacintoport including: the Contract, including the solicitation and the amendments available; USAID programmatic setting in which private voluntary organizations administer major features of the program under grant agreements with USAID; award of the ocean freight contracts by the private voluntary organizations at the direction of USAID; the commercial practices of the ocean carriers in crafting offers for the food aid cargo; and the proper measure of damages to USAID. The programs are very different from standard government acquisitions because USAID has crafted its programs so that much of the risk in the transportation of food aid is born by the private voluntary organizations, not USAID. Also, we reviewed a substantial amount of documentation (emails, vessel manifests, commodity scheduling records, and depositions) exchanged in discovery between Sealift and Jacintoport in connection with a case brought by Jacintoport against Sealift in Texas.

6. Mr. Raggio thereafter engaged my firm and Troutman Sanders to represent him as Relator in an FCA case.

7. On November 5, 2010, Mr. Raggio filed this lawsuit under seal, alleging that Jacintoport and Seaboard Marine, Ltd. ("Seaboard" and collectively with Jacintoport, "Defendants") charged carriers rates in excess of the Contract Schedule B caps, causing the submission of false and inflated claims to USAID.  See Relator's Complaint [ECF No. 1].  Troutman with my assistance also provided a detailed Confidential Disclosure Statement with a discussion of the program and a collection of exhibits to the United States Department of Justice with accompanying exhibits in February 2011. Shortly thereafter, Mr. Raggio, Mr. Nagle and I met with attorneys from the Department of Justice and representatives from

USAID to discuss the disclosure statement. Follow up records and analysis ere provided in responses to Department of Justice inquiries. During 2010, 2011, and 2012, Mr. Nagle and I continued our assistance to the United States in its investigation of the sealed Complaint, including, *inter alia*, meeting with the Government, producing documents to the Government, and supplementing the Relator's statement and the sealed Complaint.

8. Upon completion of the United States' investigation of the sealed Complaint, the United States filed its Complaint in Intervention on October 19, 2012. See United States' Complaint in Intervention [ECF No. 15]. The United States alleged that, as a result of Jacintoport charging stevedoring rates in excess of the Contract's rate caps, Jacintoport caused the submission of false and inflated claims to USAID, in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. *Id.*

9. On November 20, 2012, Relator filed his First Amended Complaint against Jacintoport [ECF No. 21]. On December 18, 2012, Jacintoport answered Relator's Complaint and counterclaimed against Relator and Sealift, alleging violations of the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. §§ 1961-68, ("RICO"), the common law tort of abuse of process, and breach of the implied covenant of good faith and fair dealing ("Counterclaims"). See Answer and Counterclaim [ECF No. 24].

10. As a result of Jacintoport's filing, Relator's counsel was forced to defend against the Counterclaims and, on February 22, 2013, Relator and Sealift moved to dismiss Jacintoport's Counterclaims against them [ECF No. 32]. Due to the subsequent filing of Amended Counterclaims and extensive motions practice surrounding the same, Relator's counsel was required to expend considerable time responding to issues relating to the Amended Counterclaims raised by Defendants.

11. Ultimately, the Court severed the remaining Amended Counterclaims and stayed them pending disposition of Relator's FCA claims. [ECF No. 64]. Thereafter, Relator's counsel provided the Government with assistance in reviewing and filing cross-motions for summary judgment in 2014 and 2015. I drafted and finalized a key affidavit from a Sealift officer, Mr. Fredd Isaksen relating to the manner in which carriers prepare bids for USAID tenders, and responding to written discovery and other pre-trial motions.

12. On December 7, 2015, the Court denied the Defendants' motion for summary judgment and granted in part the United States' cross-motion for summary judgment. [ECF No. 121]. This Court held that: (1) Jacintoport breached its Contract with USAID; (2) the Defendants caused the submission of false or fraudulent claims to the United States; (3) the United States suffered damages as a result; and, (4) the quantum of contract damages had been fixed. See Order at 15–18 [ECF No. 121]. This Court also held that a genuine issue of material fact existed regarding the Defendants' scienter, see *id.* at 11, and set for trial the issues of whether the Defendants acted "knowingly," as defined by the FCA, and, if so, the amount of damages and civil penalties. *Id.* at 18–19.

13. The Court's trial schedule required the parties, *inter alia,* to prepare a joint pre-trial statement, file pre-trial exhibit lists, file motions *in limine*, file objections to exhibits and responses thereto, and identify all agreed and proposed stipulations of fact. While the United States took the laboring oar, Relator's counsel took the lead on drafting and researching several motions *in limine*, actively participated in conference calls with counsel, and reviewed all filings.

14. On March 24, 2016, almost six years after Relator filed his Complaint, the parties filed a notice of settlement in principle and motion to stay the trial, scheduled to begin on April

18, 2016 [ECF Nos. 136–37].  On August 1, 2016, the United States and Relator advised

the Court of the execution of a final settlement agreement among the United States,

Relator, and the Defendants [ECF No.  142].  Under the terms of the settlement

agreement, the Defendants agreed to pay the United States the sum of $1,075,000, and

the United States agreed to pay Relator the sum of $215,000, representing 20% of the

proceeds.  See Settlement Agreement at 3, attached hereto as Exhibit B.  The Settlement

Agreement expressly reserved Relator's claims for attorneys' fees and costs.  See Joint

Stip. of Dismissal [ECF No. 142]; Settlement Agreement at 4.

15. On August 4, 2016, the Court dismissed the matter with prejudice and ordered Relator to

submit his Petition for Attorneys' Fees and Costs not later than August 19, 2016.  [ECF

No. 143].

16. My fees for time devoted to this case are $154,350 for 228.66 hours of time at the rate of

$675 per hour as set out in the billing statements in Exhibit C hereto.

17. The division of my hours by calendar year was approximately: 100 hours for 2011; 8

hours for 2012; 70 hours for 2013; 16 hours for 2014; 22 hours for 2015; and 12 hours for

2016. See Exhibit C hereto. As this breakdown suggests, a substantial portion of my time

was devoted to for investigation, documentation and evaluation of the case in preparation

for filing the Complaint and for assisting the Department of Justice in its evaluation of

the case in 2012 and 2013.

18. The hourly rates charged with commensurate with my role and my rates for such work as

focusing on the peculiar USAID programs and the specialized nature of the carrier

participation. I have a wealth of specialized maritime experience in these programs

having been involved in the minutiae of administration of the food aid programs from the

point of view of ocean carriers for more than 30 years The law provides a priority for U.S-flag vessels under what is commonly called the Cargo Preference Act, 46 U.S.C. §55305.  As Assistant Chief Counsel at the Maritime Administration, I administered the revision of the program financing and rules in response to major legislative amendments in the mid- 1980's.  My office crafted the legal defense of the reach of the Cargo Preference Act program in lengthy deliberations that eventually were resolved by the Department of Justice Office of Legal Counsel.

19. In private practice, I have brought a number of successful administrative and judicial challenges to the agency decisions, policy and practices over the years relating to the administration of these programs. See, e.g.,  *Farrell Lines Incorporated v. United States Department of Agriculture,* D.D.C. C.A. No. 98-2046 (filed September 19, 1998) (Judge Sullivan)(consent decree ordering revision of agency rules as to competition for food aid cargoes among U.S. carriers); *Victory Maritime v. Pressley*, D.D.C. CA No. 01 – 0381 (Judge Roberts) (action against the USAID on behalf of an affiliate of Sealift over longstanding matters of statutory interpretation of food aid law, the U.S. Department of Justice advised the court that it could not properly answer the allegations owing to conflict among its client agencies; when the matter was referred to the Civil Division, Department of Justice for resolution of the litigation position of the Government, the Director, after briefing, adopted Sealift affiliate's position and so advised the Court).

20. I have devoted nearly 20 hours to drafting and preparing the fee petition, see Exhibit D attached, which, as a matter of discretion, I have reduced to 14 hours for which I seek compensation of $9450.

21. Also, in support of the petition for fees, I have engaged at a cost of $5000 to date an expert on hourly rates for Washington D.C. firms, Thomas L. Mills, a former managing partner of the Washington, D.C. office of Winston & Strawn, LLP with extensive experience in maritime and false claims law and litigation. Mr. Mill's declaration is included in the exhibits in support of this fee petition.

Sworn and subscribed to under the penalty of perjury this  19 th day of August, 2016

Timothy B. Shea

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* )<br>    JOHN RAGGIO, )<br> )<br>            Plaintiff, )<br> )<br>        v. )<br> )<br> )<br>JACINTOPORT INTERNATIONAL, LLC, )<br>and )<br>SEABOARD MARINE, LTD., )<br> )<br>        Defendants. )<br>_____ ) | Civ. No. 1:10-cv-01908 (BJR) |

**Exhibit A to Declaration of Timothy B. Shea**

Curriculum Vitae
TIMOTHY B. SHEA

1900 L Street, NW, Suite 303
Washington, DC 20036
cell (202) 215-5354   timbshea@gmail.com

## EXPERIENCE

**1991 – Present   Partner, Nemirow, Hu & Shea, Washington, DC**

Commercial practice of law with emphasis on contracting, administrative advocacy before federal agencies and judicial litigation in federal trial and appellate courts. Advise U.S. and foreign investors, owners, charterers, brokers and shippers on all aspects of the maritime transportation industry, e.g., the financing, construction, acquisition, documentation, marketing, operation and regulation of U.S.-flag and foreign-flag vessels. Consult on and craft policy initiatives, rules and practices to provide incentives or redress inequities in administration of maritime laws. Initiate judicial actions often for injunctive relief against government agencies and private parties for violations of maritime laws or contracts.   Negotiate and litigate commercial and contract disputes often with international law issues.

Assist clients in analysis, financing and structuring participation of transportation projects.

General commercial and employment advice, representation and litigation.

*Representative Activities:* Advise and appear for maritime interests in informal administrative hearings and disputes on rules of contract award for Government sponsored cargoes (e.g., eligibility for award, terms of carriage, rate limits and vessel priorities); bring protests and issues to contracting activities regarding proper application of U.S.-flag priorities. Initiate administrative or judicial challenges to final decisions. Given that these transportation contracts are awarded on short timing with largely commercial terms, the administrative and judicial contests must be brought on an urgent basis.

Advise and represent contractors on rights and remedies under Government grants and contracts. For example, in appeal of termination for default of long term ship management contract before a board of contract appeals, achieved highly satisfactory resolution using history of Government failures to abide by applicable vessel classification society standards in modifications and repairs.  In another matter, after initiating alternative dispute resolution efforts using designated experts before discovery, achieved highly satisfactory disposition for client.

Advise investors with maritime related projects regarding regulatory restrictions in the coastwise laws and application of maritime assistance programs. Representing innovative maritime port investors with financing and regulatory opportunities.

*Major Accomplishments:*

- Initiated a series of judicial challenges to administrative agency decisions prompting re-examination of policies adverse to U.S.-flag carriers. In a district court action on behalf of a U.S. carrier wrongly denied the opportunity to offer on certain Government sponsored cargoes, won a consent decree from

the Government granting competitive status to intermodal carriage and other policies that have remained in place for more than two decades. See *Farrell Lines Incorporated v. United States Department of Agriculture,* D.D.C. C.A. No. 98-2046 (filed September 19, 1998) (Judge Sullivan). In 2002, brought an action against the United States on behalf of a U.S. carrier on a longstanding matters of statutory interpretation; the U.S. Department of Justice advised the court that it could not properly answer the allegations owing to conflict among its client agencies. When the matter was referred to the Civil Division, Department of Justice for resolution of the litigation position of the Government, the Director, after briefing, adopted my clients' position and so advised the Court. See *Victory Maritime v. Pressley,* D.D.C. CA No. 01 – 0381 (Judge Roberts). This precedent, which never had to be submitted to the judge for decision, has yielded immediate substantial benefits to the clients and to the U.S.-flag industry.

- Brought an action on behalf of the largest U.S.-flag vessel owner complaining of inequities in administration of U.S.-flag contracting policies and was rewarded with an "obey the law" consent agreement from the Department of Justice within ten days of filing the complaint. See *Maersk Line, Ltd. v. Vilsak,* E.D. VA No. 09 -747.

- Spearheaded changes in the administration of grant program that became a model for the United States maritime industry by freeing carriers from restrictions that had worked to limit investment. Initiated an application that separated the carrier from traditional restrictions that had hindered investment and integration of carriers with foreign operators and investors.

**1987 – 1991      Vice President and General Counsel, Legal Services Corporation, Washington, DC**

The Legal Services Corporation is a publicly funded entity organized as a District of Columbia corporation under a mandate from Congress to provide grants for civil legal services to the poor throughout the United States. See 42 U.S.C. §2996. Advised Presidentially appointed Board of Directors as well as corporate officers and employees on legal and policy issues. Managed the work of in-house legal staff and policy staff as well as private outside counsel on the full range of Corporation issues: corporation authorities, appropriations restrictions, administrative challenges to Corporation actions, funding decisions, adverse actions against grantees, Board of Directors questions and meetings, contracting review, contractual relations with grantee organizations, management of insurance and injury claims, evaluation of competing models for providing services, appearances at injunctive hearings relating to Corporation  decisions, application of DC corporate law and governance, and employment issues.

Required to assess application of ordinary Governmental law and rules to independently chartered Corporation, its funds and functions, as the Corporation was not an agency or instrumentality of the Government. For example, as a private entity, the Corporation was not represented by the US Department of Justice in judicial

2

litigation and was not governed by the Administrative Procedure Act but rather a pre-APA analogy.

Regularly addressed Board of Directors open meetings on rulemaking, legal and policy issues and impromptu queries of Board members and grantee representatives. Invited speaker at ABA Mid-Winter meetings in 1988, 1989 and 1990.

Because one of the primary objectives of the Board at that time was to update the Corporation rules in the CFR, crafted a number of notices of proposed rules, evaluated comments from interested parties, and addressed committee questions and comments and full Board inquiries at open meetings. Finalized a large number of rules and revisions governing the Corporation and its grantees.

*Major Accomplishments:*

- Resolved longstanding inflexibility in responding to moderate grantee covenant issues by crafting an informal decision-making within the confines of existing regime that mandated formal hearings for most adverse actions. Using an informal paper hearing for modest funding decisions made for timely process commensurate with the demands of the program to create proper incentives for following Corporation rules.
- Improved Corporation deliberative processes by formalizing final agency decision making in relation to requests and disputes arising from grantees.
- Crafted rules to limit specific political activities of grantees, such as redistricting litigation, invoking long unused corporate authorities permitting the Corporation to prioritize grantee activities. Defended the rule at open meeting of the Board and drafted the rule together with legal rationale for publication. See 58 *Fed. Reg.* 10569 and 31954 (1989). Rule was sustained by the Circuit Court of Appeals. See *Texas Rural Legal Aid, Inc. v. Legal Services Corporation,* 940 F.2d. 685 (D.C. Cir. 1991). See also other rules issued at 52 *Fed. Reg.* 28434 (1987); 54 *Fed. Reg.* 18109 (1989); 53 *Fed. Reg.* 30678 (1988).
- Worked with outside counsel and bar associations to create a constructive dialogue on the direction of Corporation initiatives in legal assistance programs.


1975 – 1987    **Trial Attorney, GS 12- 14; Senior Litigation Counsel, GS 15 in 1982; and Assistant Chief Counsel for Maritime Assistance, GM 15 in 1984, in the Office of Chief Counsel, Maritime Administration, Department of Transportation**

*As GM – 15 Chief of Maritime Assistance Division:* Directed legal staff activities covering the main maritime, grant and regulatory activities of the Maritime Administration (e.g., vessel operating assistance contracts, construction assistance contracts, cargo reservation system for U.S.-flag vessels, tax programs for U.S.-built vessels, and administration of coastwise laws); drafted opinions and memoranda for the chief counsel and agency head.

Worked closely with senior managers on the most visible maritime programmatic issues of the time (e.g., briefed issues and met with interagency officials regarding coverage of the major cargo reservation systems for DOD and other Government programs; drafted  briefing papers for senior agency officials supporting agency claim for application of maritime laws to new programs and contracts; drafted evaluations of competing approaches to make administration of maritime assistance programs more flexible and responsive to emerging needs); represented the chief counsel at meetings of the senior agency officials relating to disposition of applications and issues.

Worked with senior policy and financial staff in analyzing project proposals and structuring agency participation.

Held secret security clearance.

*As GS- 12 to 14 Trial Attorney (1975 to 1979) and GS -15 Senior Litigation Counsel (1982 to 1987):* advised and defended the Maritime Administration in major litigation in the areas of maritime law, administrative decisionmaking, fair employment and contracts.

Represented agency in scores of administrative trial-type APA hearings before administrative law judges covering: public necessity determinations associated with grants of assistance for U.S.-flag operations centering on econometric analyses of cargo traffic; specialized performance and construction claims relating to newly built vessels; and ordinary government contract disputes. Decisions are reported only in specialized service Pike & Fisher, *Shipping Regulation & Reports*.

Advised the Chief counsel and Administrator on peculiarly maritime related initiatives including: claims and judicial actions of seaman's' pension funds arising out of operations assisted by the Government; and challenges to agency authorities and discretion to provide assistance under the merchant marine acts.

- Acted as agency counsel in a glut of injunction applications and merits decisions in the district courts, highly visible in the maritime industry at the time, relating to informal adjudications under which foreign trade tankers were given temporary permission to operate in the U.S. domestic trade. These actions demanded timely, careful responses with little opportunity for review from agency colleagues or the Department of Justice. See, e.g., *American Trading Transportation, Co., v. United States,* 791 F. 2d 942 (D.C. Cir. 1986); *Atlantic Richfield Co. v. Unites States,* 774 F. 2d 1193 (D.C. Cir. 1985); *American Maritime Assoc. v. United States*, 766 F.2d 545 (D.C. Cir. 1985); *Sea-Land Service, Inc. v. Dole*, 596 F. Supp. 1143 (D.D.C. 1984); *Liberty Maritime Corp. v. United States*, 1990 U.S. Dist. LEXIS 20046 (D.D.C. 1990).

- Lead agency counsel on a range of judicial challenges to important programmatic agency decisions. See e.g., *Alaska Excursion Cruises, Inc. v. United States*, 608 F. Supp. 1084 (D.D.C. 1985) (authority of agency to waive certain cabotage privileges); *Seabulk Transmarine I, Inc. v. Dole*, 645 F. Supp. (D.D.C. 1986) (standards for claim of change under long term contract); *Calhoun v. Maritime Administration*, D.D.C. CA No. 84 – 2444 (1986) (rights of third party beneficiaries over grant funds).

- Sole agency counsel defending complex class action discrimination complaint with voluminous documentary discovery and more than one hundred depositions from 1978 through 1984, together with subsequent individual judicial actions. Responsible for drafting pleadings, generating discovery, preparing witnesses, conducting depositions, crafting sophisticated expert statistical studies and presenting testimony at trial with the AUSA.  Solely responsible for working with the experts in measuring promotion rates using state of the art analytical tools at the time for such cases, an infinite version of the Mantel-Haenszel test and a variant of a biomedical survival test. See *King v. Dole*, 595 F. Supp. 1140 (D.D.C. 1984) (Judge Oberdorfer).

1973 – 1975       **General practice, Springfield, Massachusetts**
Litigation, business advice and real estate transactions.


EDUCATION
College of the Holy Cross, Worcester, MA                    B.A., Mathematics
Univ. of Notre Dame Law School, Notre Dame, IN             Juris Doctor

PROFESSIONAL MEMBERSHIPS
Admitted to Massachusetts Bar, District of Columbia Bar, and Maryland Bar. Admitted to practice before the United States District Court for the District of Columbia, the United States Circuit Court of Appeals for the District of Columbia, the United States District Court of Maryland, and United States Court of Appeals for the Federal Circuit and the Court of Federal Claims.

PROFESSIONAL RECOGNITION AND ACTIVITIES
Awarded Department of Transportation Silver Medal, the second highest available in the Department, for professional excellence in October 1985.

Served on Board of Advisors for Catholic Charities Archdiocesan Legal Network of Washington, DC from 1991 to 2005 – probably the longest serving member to date – to guide the nascent program into a vigorous, widely supported *pro bono publico* program; represented a number of indigent clients in a variety of matters with success (e.g., successfully resolved several termination actions by negotiation and by trial; prevailed in an innovative federal workers' compensation claim for environmental injury in which permanent disability benefits were awarded) .

Recognized in 1997 as Annual Outstanding Individual Attorney for Pro Bono Legal Services by Catholic Charities Archdiocesan Legal Network for Washington Metropolitan Area.

Elected and served as Secretary, Vice President and President of the Washington, DC maritime interest association, the Propeller Club of Washington, DC, over a six year period from 1998 to 2004. Arranged for speakers and conferences on topics of current

interest to maritime community; introduced industry, military and legislative leaders at dinners and conferences.

PERSONAL

Married with six children. Wife is a licensed geriatric social worker with large DC hospital center.

Activities: handball; bicycling; reading (e.g., *Scientific American*; a great variety of books including audio books).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | |
| JOHN RAGGIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:10-cv-01908 (BJR) |
| | ) | |
| | ) | |
| JACINTOPORT INTERNATIONAL, LLC, | ) | |
| and | ) | |
| SEABOARD MARINE, LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Exhibit B to Declaration of Timothy B. Shea**

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Agency for International Development ("USAID") (collectively the "United States"), Jacintoport International LLC ("Jacintoport") and Seaboard Marine, Ltd. ("Seaboard Marine") (collectively the "Defendants"), and John Raggio (the "Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.      Jacintoport is a private port facility operator located in Houston, Texas. Jacintoport offers a variety of shipping services as part of its warehouse and terminal business located at the Port of Houston.  Seaboard Marine, an ocean transportation company, is based in Miami, Florida.  During the relevant time period, some Seaboard Marine employees worked at Jacintoport in Houston.

B.      On November 5, 2010, John Raggio filed a *qui tam* action in the United States District Court for the District of Columbia captioned *United States ex rel. Raggio v. Jacintoport International, LLC, et al.*, Case No. 1:10-cv-01908-BJR, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). The Relator alleged, *inter alia*, that Defendants charged more for stevedoring services than permitted by a contract Jacintoport held with USAID bearing number TRN-C-00-07-00044-00 (the "Contract").  The United States intervened in the Civil Action on August 20, 2012, and filed its Complaint in Intervention on October 19, 2012 against Jacintoport.  On April 8, 2015, the United States filed its First Amended Complaint in

1

Intervention ("First Amended Complaint in Intervention") against Jacintoport and

Seaboard Marine.

C.      On June 24, 2014, Jacintoport filed a claim in the Court of Federal Claims

seeking payment for certain fumigation expenses under the Contract captioned

*Jacintoport International, LLC v. United States*, No. 14-cv-00541-EDK (the "COFC

Action").

D.       The United States contends that it has certain civil claims against

Defendants for the conduct and claims alleged in the First Amended Complaint in

Intervention.  That conduct is referred to below as the Covered Conduct.

E.      This Settlement Agreement is neither an admission of liability by the

Defendants or the United States, nor a concession by the United States or the Defendants

that their claims are not well founded.  Defendants deny the United States' allegations in

Paragraph D.

F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the

proceeds of this Settlement Agreement and to Relator's reasonable expenses and

attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted

litigation of the above claims, and in consideration of the mutual promises and

obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.      Defendants shall pay to the United States $1,075,000 (the "Settlement

Amount") by electronic funds transfer no later than 21 days after the Effective Date of

this Agreement pursuant to written instructions to be provided by the Civil Division of

the United States Department of Justice.  Defendants shall also sign a stipulation to

dismiss, with prejudice, their claims against the United States in the COFC Action no

later than 14 days after the Effective Date of this Agreement.  Each party in the COFC

Action shall bear its own legal and other costs incurred with that matter.

2.      Conditioned upon the United States receiving the Settlement Amount from

Defendants and as soon as feasible after receipt, the United States shall pay $215,000 to

Relator by electronic funds transfer.

3.      Subject to the exceptions in Paragraph 5 (concerning excluded claims)

below, and conditioned upon Defendants' full payment of the Settlement Amount and

dismissal, with prejudice, of the COFC Action, the United States releases Defendants

from any civil or administrative monetary claim the United States has for the Covered

Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil

Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of

contract and unjust enrichment.

4.      Subject to the exceptions in Paragraphs 5 and 7 below, and conditioned

upon Defendants' full payment of the Settlement Amount, Relator, for himself and for his

heirs, successors, attorneys, agents, and assigns, releases Defendants from any civil

monetary claim the relator has on behalf of the United States for the Covered Conduct

under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.      Notwithstanding the releases given in paragraph 3 and 4 of this

Agreement, or any other term of this Agreement, the following claims of the United

States are specifically reserved and are not released:

a.   Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.   Any criminal liability;

c.   Except as explicitly stated in the Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

d.   Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.   Any liability based upon obligations created by this Agreement;

f.   Any liability of individuals;

g.   Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.   Any liability for failure to deliver goods or services due;

i.   Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6.   Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. §

4

3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7.      Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Defendants, and their officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, except under 31 U.S.C. § 3730(d) for expenses and attorney's fees and costs.  Relator does not release, and expressly reserves, his right against Defendants under 31 U.S.C. § 3730(d) for expenses and attorney's fees and costs and any defenses Relator may have to the counterclaims and other claims as set forth in Paragraph 10 below.

8.      Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.  Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9.      Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its

agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10.     Defendants do not release, and expressly reserve, the counterclaims made against Relator and Sealift, Inc. in the First Amended Answer and Counterclaims of Defendant Jacintoport International LLC in the Civil Action, and any other judicial, administrative, or legislative claims or complaints Defendants may have against Relator and Sealift, Inc. based on the facts and circumstances therein alleged.

11.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and their present or former officers, directors, employees, shareholders, and agents in connection with:

> (1)     the matters covered by this Agreement;
>
> (2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;
>
> (3)     Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);
>
> (4)     the negotiation and performance of this Agreement;
>
> (5)     the payment Defendants makes to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

       b.    Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

       c.    Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants or any of their subsidiaries or affiliates from the United States.  Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

     12.    This Agreement is intended to be for the benefit of the Parties only.

     13.    Upon receipt of the Settlement Amount by the United States and dismissal, with prejudice, of the COFC Action, as described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal

With Prejudice of the Civil Action pursuant to Rule 41(a)(1).  Such Joint Stipulation of

Dismissal shall not dismiss with prejudice the counterclaims and other claims referred to

in Paragraph 10 above.

14.     Each Party shall bear its own legal and other costs incurred in connection

with this matter, except as provided in paragraph 7 and in connection with the

counterclaims and other claims referred to in Paragraph 10, including the preparation and

performance of this Agreement.

15.     Each party and signatory to this Agreement represents that it freely and

voluntarily enters in to this Agreement without any degree of duress or compulsion.

16.     This Agreement is governed by the laws of the United States.  The

exclusive jurisdiction and venue for any dispute relating to this Agreement is the United

States District Court for the District of Columbia.  For purposes of construing this

Agreement, this Agreement shall be deemed to have been drafted by all Parties to this

Agreement and shall not, therefore, be construed against any Party for that reason in any

subsequent dispute.

17.     This Agreement constitutes the complete agreement between the Parties.

This Agreement may not be amended except by written consent of the Parties.

18.     The undersigned counsel represent and warrant that they are fully

authorized to execute this Agreement on behalf of the persons and entities indicated

below.

19.     This Agreement may be executed in counterparts, each of which

constitutes an original and all of which constitute one and the same Agreement.

20.     This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

21.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

22.     All parties consent to the United States' and Defendants' disclosure of this Agreement, and information about this Agreement, to the public.

23.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: _____BY: _____
<br>Benjamin C. Wei
<br>Trial Attorney
<br>Commercial Litigation Branch
<br>Civil Division, United States Department of Justice

DATED: _____BY: _____
<br>Jennifer A. Short
<br>Assistant United States Attorney
<br>District of Columbia

## DEFENDANTS

DATED: _____BY: _____
<br>James Hamilton
<br>MORGAN, LEWIS & BOCKIUS
<br>2020 K Street, NW
<br>Washington, D.C. 20006

DATED: _____BY: _____
<br>Stephen C. Irick
<br>Vice President and General Counsel
<br>Seaboard Marine, Ltd.

## RELATOR

DATED: _____BY: _____
<br>Megan C. Rahman
<br>TROUTMAN SANDERS LLP
<br>1001 Haxall Point
<br>P.O. Box 1122 (23218)
<br>Richmond, VA 23219

DATED: _____BY: _____
<br>John Raggio
<br>Relator

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* )<br> JOHN RAGGIO, )<br> )<br>       Plaintiff, )<br> )<br> v. )<br> )<br> )<br> JACINTOPORT INTERNATIONAL, LLC, )<br> and )<br> SEABOARD MARINE, LTD., )<br> )<br>       Defendants. )<br>_____) | Civ. No. 1:10-cv-01908 (BJR) |


**Exhibit C to Declaration of Timothy B. Shea**

8/11/2016                                    Nemirow Hu & Shea
9:44 AM                                      Pre-bill Worksheet                              Page      1

---

### Selection Criteria

Clie.Selection      Include: Raggio fca
Slip.Date           10/15/2008 - 8/11/2016

| Nickname | Raggio fca \| 35 |
|---|---|
| Full Name | |
| Address | |
| Phone | Fax |
| Home | Other |
| In Ref To | |
| Fees Arrg. | By billing value on each slip |
| Expense Arrg. | By billing value on each slip |
| Tax Profile | Exempt |
| Last bill | |
| Last charge | 4/6/2016 |
| Last payment | Amount      $0.00 |

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 8/23/2010 1375 | TShea Draft | 675.00 | 10.75 | 7,256.25 | Billable |

Telephone conference with Nagle; evaluate issues raised;
evaluate memo from nagle; [8.23 -- 1.45 h]
begin draft responses to memo;
craft responses to Nagle; [8.24 -- 3 hrs]
legal reaserch re computation  of damages in FCA in fixed price contracts
and the status of irregualarities in subcontracts in fixed price competitivley
bid general contracts;
review contract documents and agency rules re reimbursement;
finalize draft responses;  [8.25 and 26 -- 6 hr]

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 8/31/2010 1380 | TShea telephone conference | 675.00 | 1.50 | 1,012.50 | Billable |

Telephone call to client concerning Nagle questions and tbs draft memo
in response;
revise draft memo in response;

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 9/8/2010 1384 | TShea telephone conference | 675.00 | 1.50 | 1,012.50 | Billable |

Telephone call to client concerning with Nagle and E Gere re issues and
facts;
Telephone call to JR re recommendation re  IG;
Revert to Nagel wit h  Telephone call;

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 9/9/2010 1387 | TShea telephone conference | 675.00 | 1.25 | 843.75 | Billable |

Telephone call with Nagle and draft response re bid process;

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 9/14/2010 1390 | TShea Review | 675.00 | 2.25 | 1,518.75 | Billable |

Review and revise draft disclosure statement and draft confidential cover
note with guide to issues;

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 10/4/2010 1398 | TShea Review | 675.00 | 2.25 | 1,518.75 | Billable |

Review and revise draft statement of facts / disclosure statement;

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 10/20/2010 1409 | TShea telephone conference | 675.00 | 0.50 | 337.50 | Billable |

Telephone call to client concerning with J Raggio re status of case and

Nemirow Hu & Shea
Pre-bill Worksheet

Raggio fca: (continued)

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| | recent issues with USAID taht may relate to FCA issues; revert to M Nagle re the issues from Raggio Telephone call; | | | | |
| 10/25/2010 | TShea | 675.00 | 3.50 | 2,362.50 | Billable |
| 1414 | Review Review and comment on draft complaint; convey comments to nagle; | | | | |
| 10/29/2010 | TShea | 675.00 | 2.75 | 1,856.25 | Billable |
| 1416 | Review Review final draft complaint and make revisions and comments; Telephone call to J Raggio re draft and status of matter; forward t o Nagel and follow up with responses to data and questions form Troutman; | | | | |
| 11/4/2010 | TShea | 675.00 | 1.00 | 675.00 | Billable |
| 1418 | telephone conference Telephone call with Nagle and colleagues re final issues; email to J Raggio  re status and request for documents in specififed time windows; | | | | |
| 11/11/2010 | TShea | 675.00 | 0.75 | 506.25 | Billable |
| 1423 | Conference Conference with J Raggio and evaluate Jacinto / Sealift settlement terms; | | | | |
| 1/6/2011 | TShea | 675.00 | 0.50 | 337.50 | Billable |
| 1443 | evaluate evaluate claim; Telephone call to client JR concerning status; | | | | |
| 1/12/2011 | TShea | 675.00 | 2.50 | 1,687.50 | Billable |
| 1449 | evaluate evaluate DOJ request; Telephone call to Nagle re how to satisfy the request for records; Telephone call to client concerning the requet for recordes; evlaute DOJ request and draft proposed response per conversation with J Raggio; | | | | |
| 1/19/2011 | TShea | 675.00 | 1.00 | 675.00 | Billable |
| 1453 | telephone conference Telephone call to client concerning to discuss the document production re the DOJ document request; follow up call to Nagle to discuss confirm that plan is responsive to DOJ; | | | | |
| 1/26/2011 | TShea | 675.00 | 4.50 | 3,037.50 | Billable |
| 1457 | evaluate evaluate collection of documents for voyage of the Advantage and Noble Star recieved from  Raggio in response to the DOJ request; outline issues and overcharges from Jacinto; Telephone call to client concerning to Nagle and email to Raggio re utility and relevance of Noble Star records; | | | | |

8/11/2016                                     Nemirow Hu & Shea
9:44 AM                                       Pre-bill Worksheet                                          Page      4

Raggio fca: (continued)

| Date ID | Timekeeper / Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 2/3/2011 1463 | TShea evaluate | 675.00 | 0.75 | 506.25 | Billable |
| | evaluate emails re documents to be produced to DOJ; evaluate documents in preparation for meeting; | | | | |
| 2/7/2011 1465 | TShea telephone conference | 675.00 | 1.50 | 1,012.50 | Billable |
| | Telephone call with Nagle re meeting and records; discussed each of the documsnts to be provided; discussed J Raggio role; evaluate next steps and summary of material to be consideed for addition; | | | | |
| 2/9/2011 1469 | TShea Draft | 675.00 | 3.75 | 2,531.25 | Billable |
| | Draft insert for memo to DOJ to accompany documents; proof final draft from Nagle and forward for J Raggio to review; | | | | |
| 2/14/2011 1473 | TShea Review | 675.00 | 0.75 | 506.25 | Billable |
| | Review memo to DOJ and Telephone call to J Raggio re revisions / edits; email to Nagle and revise memo; | | | | |
| 2/16/2011 1475 | TShea Meeting | 675.00 | 7.75 | 5,231.25 | Billable |
| | Meeting with Nagle, colleagues and Raggio to discuss DOJ meeting; Meeting of Nagle, Raggio wiht DOJ attorneys and USAID investigators at DOJ building;[ 5.5 hrs on 2.16] confer wiht Nagle re outstanding issues from meeting ; confer with  Raggio re outstanding issues; contact Legge Farrow of Houston re documetns from Houston litigation;[ .45 hrs on 2.17] evaluate records fron Houston litigation;  [ 1.25 hrs on 2.18] | | | | |
| 2/21/2011 1478 | TShea Review | 675.00 | 13.25 | 8,943.75 | Billable |
| | Review documents and depositions Labbe,  from Houston litigation; [1 hrs 0n 2.21] review depo of other witnesses Raggio, USAID witnesses draft notes of main issues and evidence; [ 5 hrs on 2.22] Continued evlauation of discovery docs and depos [3.25 hrs on 2.23 ] continued document review of Houston recs; Telephone call to Nagle re Houston documents and evidence; discuss and outline supplement to DOJ; [3.5 hrs on 2.24] | | | | |
| 3/8/2011 1485 | TShea evaluate | 675.00 | 8.50 | 5,737.50 | Billable |
| | evlauate and review records from Houston litigation per req for claiification; [3 hrs on 3.8] evaluate and comment on draft memo from Troutman to DOJ; test other issues re charges for unloading cargoes from rail cars; two calls to industry individuals re prepo program tonnages and practice; evaluate Houston data re schedules showing tonnages and charges; draft revisions to Troutman memo; | | | | |

Raggio fca: (continued)

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| | draft memo re prospect of claim for charges comming into warehouse from rail cars; evaluate and respond to four emails from M Nagle; second round of comments on memo;  [5.5 hrs on 3.11] | | | | |
| 3/14/2011 1486 | TShea Review Review Houston records for correspondence re rates for movements into the warehouse; evaluate the data in Housto records re facility income; | 675.00 | 4.25 | 2,868.75 | Billable |
| 6/9/2011 1522 | TShea telephone conference Telephone call witt Nagle re his Telephone call with AUSA and status of the case; discussion of how best to preserve claims and defenses; review contract; Telephone call to client concerning status call wiht Nagle and limitation to prepo cargoes; | 675.00 | 1.25 | 843.75 | Billable |
| 6/10/2011 1523 | TShea evaluate evaluate data and issues re overcharges for suppliers; evaluate sources of data re charges; | 675.00 | 1.00 | 675.00 | Billable |
| 6/13/2011 1526 | TShea Draft Draft amended complaint to add claims for charges to suppliers; review draft; final edits to revised amended complaint; | 675.00 | 4.75 | 3,206.25 | Billable |
| 6/21/2011 1532 | TShea telephone conference Telephone call  with Nagle and then J Raggio re extension request from the Govt and status of the confidentiality; | 675.00 | 0.50 | 337.50 | Billable |
| 7/22/2011 1543 | TShea telephone conference Telephone call to J Raggio re inquiry from AUSA for former Jacintoport employees who may be able to speak to overcfharge issues; Telephone call to AUSA Short to advise of potential witness; | 675.00 | 0.75 | 506.25 | Billable |
| 9/29/2011 1563 | TShea evaluate evaluate email from Raggio re chage in per ton rates for Jacinto; Telephone call to nagle to follow up; | 675.00 | 0.75 | 506.25 | Billable |
| 10/25/2011 1567 | TShea evaluate evaluate status of issues and draft memo to Rahman re: pass through of costs; differences in pricing; and scope of WLC contract; need to push AUSA office; review and finalixe memo; send to Rahman; | 675.00 | 4.00 | 2,700.00 | Billable |

Raggio fca: (continued)

| Date ID | Timekeeper / Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 1/5/2012 1589 | TShea telephone conference | 675.00 | 0.33 | 225.00 | Billable |

Telephone call to client concerning wiht M Rahman re status, DOJ posture and document production by Jacinto;
Telephone call to client concerning status and DOJ request to enlarge time to evaluate claims;

| 4/16/2012 1632 | TShea evaluate | 675.00 | 1.25 | 843.75 | Billable |

evaluate issue of damages;
draft summary for co-couhnsel;
Telephone call to J Raggio re damages and status;

| 12/6/2012 1641 | TShea Draft | 675.00 | 4.00 | 2,700.00 | Billable |

Draft response to Hamilton letter re claims of abuse of process; evaluate release from Houston litigation; revise draft; email exchange with M Rahman; Telephone call to client JR concerning events at Houlsto case and discuss contents of Hamilton letter;  evlauate Rahman draft; comment;

| 12/19/2012 1642 | TShea evaluate | 675.00 | 2.25 | 1,518.75 | Billable |

evaluate Jacinto answer and counter;
Telephone call to client concerning counter;
Telephone call to Rahman re counter;

| 1/1/2013 1654 | TShea Draft | 675.00 | 1.75 | 1,181.25 | Billable |

Draft response to DOJ inquiry; evaluate data from broker Powell; draft memo re shipping instructions and notice to deliver;

| 1/9/2013 1648 | TShea telephone conference | 675.00 | 4.00 | 2,700.00 | Billable |

Telephone call to client concerning requests for dociments and discuss status of case; -- 15 min;
evaluate Jacinto opposition to Motion for Leave to File Amended Complaint;
 legal research re Jacinot oopposition;

| 1/10/2013 1649 | TShea Research | 675.00 | 4.00 | 2,700.00 | Billable |

Legal Research re Jacinto motion to dismioss first amended complaint;;
begin draft  oposition;

| 1/11/2013 1650 | TShea evaluate | 675.00 | 0.33 | 225.00 | Billable |

evaluate request form DOJ Short re meaning of shipping instructions and association of billling records with parcels of cargoes at port facility;
email quiry to Sealift for response;

Raggio fca: (continued)

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 1/16/2013 | TShea | 675.00 | 11.50 | 7,762.50 | Billable |
| 1653 | Research | | | | |
| | Research and draft opposition to jacinto motion to dismiss FAC; | | | | |
| 1/23/2013 | TShea | 675.00 | 2.50 | 1,687.50 | Billable |
| 1657 | Review | | | | |
| | Review and edit draft Opposition to Jacinto Motin to Dismiss per comments and revisions of Troutman; proof and file Opposition; | | | | |
| 1/31/2013 | TShea | 675.00 | 2.00 | 1,350.00 | Billable |
| 1659 | evaluate | | | | |
| | email resonse to Troutman request re Sealift contract; evaluate broker information re World Food data and other pvo data; preopare summary for Troutman and AUSA; | | | | |
| 2/4/2013 | TShea | 675.00 | 0.50 | 337.50 | Billable |
| 1662 | evaluate | | | | |
| | evaluate Jacinto repy to opposition for leave to serve; | | | | |
| 2/5/2013 | TShea | 675.00 | 0.75 | 506.25 | Billable |
| 1663 | evaluate | | | | |
| | evalaute draft  legal memorandum in suport of draft motion to dismiss; | | | | |
| 2/12/2013 | TShea | 675.00 | 2.00 | 1,350.00 | Billable |
| 1665 | Research | | | | |
| | Research re DC Cir on FCA counterclaims; email Troutman with decisions; | | | | |
| 2/19/2013 | TShea | 675.00 | 6.50 | 4,387.50 | Billable |
| 1668 | Draft | | | | |
| | Evaluate Troutman draft motion to dismiss; Draft edits for draft motion to dismiss; legal research re edits; revised edits and forward to Troutman; f | | | | |
| 2/22/2013 | TShea | 675.00 | 1.50 | 1,012.50 | Billable |
| 1670 | evaluate | | | | |
| | evaluate motion to dismiss by Raggio; evaluate USA motion to dismiss; | | | | |
| 3/21/2013 | TShea | 675.00 | 3.00 | 2,025.00 | Billable |
| 1677 | evaluate | | | | |
| | evaluate Jacinto first amended answer and counter claim;  begin research re good faith and release; | | | | |
| 3/25/2013 | TShea | 675.00 | 8.00 | 5,400.00 | Billable |
| 1678 | Research | | | | |
| | Research and outline points re release in Houston ligtigation as basis for dismissal; | | | | |

8/11/2016                                       Nemirow Hu & Shea
9:44 AM                                         Pre-bill Worksheet                                    Page      8

Raggio fca: (continued)

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 3/27/2013 | TShea | 675.00 | 6.25 | 4,218.75 | Billable |
| 1679 | Draft | | | | |
| | Draft and research re release as basis for dismissal of Jacinto claims; | | | | |
| 3/29/2013 | TShea | 675.00 | 2.50 | 1,687.50 | Billable |
| 1680 | Draft | | | | |
| | Draft amendment to motion to dismiss based on release in Houston case; | | | | |
| 4/3/2013 | TShea | 675.00 | 3.00 | 2,025.00 | Billable |
| 1681 | Draft | | | | |
| | Draft memorandum re release terms as basis for dismissing fraud and misrepresentation claims; draft memo  for Relator motion to dismiss; | | | | |
| 4/24/2013 | TShea | 675.00 | 3.50 | 2,362.50 | Billable |
| 1682 | evaluate | | | | |
| | evaluate draft motion to dismiss first amended answer and counterclaims from Troutman; comments to M Rahman; research and draft points re forum selection clause in Release as basis for motion to dismiss counterclaims; | | | | |
| 4/25/2013 | TShea | 675.00 | 3.50 | 2,362.50 | Billable |
| 1683 | Draft | | | | |
| | Draft and research forum selection points for memo in support of motion to dismiss first amended answer and counterclaim; forwrd points to Troutman; | | | | |
| 6/17/2013 | TShea | 675.00 | 2.75 | 1,856.25 | Billable |
| 1699 | evaluate | | | | |
| | read, research  and draft commetns on draft reply to in support of Motion to Dismiss FCA counterclaim of Jacintport; froward comments to Troutman; | | | | |
| 7/29/2013 | TShea | 675.00 | 1.00 | 675.00 | Billable |
| 1707 | evaluate | | | | |
| | evaluate Govt opposition to Jacinto motion for partial summ judgment re intent and FCA requirements; Telephone call to client concerning status and outstanding issues dn time frames; | | | | |
| 9/4/2013 | TShea | 675.00 | 1.00 | 675.00 | Billable |
| 1723 | evaluate | | | | |
| | read and evaluate the Jacinto opposition to the Giovt motion fpr partial summ judgment re intent; | | | | |
| 3/12/2014 | TShea | 675.00 | 1.00 | 675.00 | Billable |
| 1784 | telephone conference | | | | |
| | preparation for Telephone call with counsel US Govt re initial disclosures, discovery and schedule; | | | | |

Raggio fca: (continued)

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 3/13/2014 1786 | TShea Draft | 675.00 | 1.25 | 843.75 | Billable |
| | Telephone call to broker contracted on govt cargoes noted in Complaint of US Govt; draft list of brokers and associate borkeers with carriers; | | | | |
| 7/21/2014 1826 | TShea telephone conference | 675.00 | 1.50 | 1,012.50 | Billable |
| | Evaluate email from Troutman regarding Jacinto subpoena; telephone conference with JR regarding subpoena telephone conference with Houston attorney M Wray regarding documents; | | | | |
| 7/23/2014 1828 | TShea evaluate | 675.00 | 6.50 | 4,387.50 | Billable |
| | Evaluate materials received from Houston litigation; evaluate flash drive from Wray with Houston documents; [2..25 hrs on 7.23] evaluate subpoena; did identify documents responsive to subpoena; forward to Troutman collection of records responsive to subpoena; telephone conference with Sealift [3.5 hrs on 7.23] | | | | |
| 7/25/2014 1829 | TShea evaluate | 675.00 | 1.50 | 1,012.50 | Billable |
| | Evaluate partial summary judgment motion by Jacinto port; telephone conference with JR regarding subpoena and follow up with email to Troutman | | | | |
| 8/30/2014 1832 | TShea evaluate | 675.00 | 2.00 | 1,350.00 | Billable |
| | Evaluate inquiry from Department of Justice with respect to notice of overcharges; evaluate documents; telephone conference with JR; | | | | |
| 9/2/2014 1840 | TShea evaluate | 675.00 | 2.75 | 1,856.25 | Billable |
| | Evaluate government opposition to motion for partial summary judgment; email to JR; evaluate email request from USAID for wire transfer records; exchange of emails with Troutman and JR regarding documents; | | | | |
| 5/21/2015 1859 | TShea evaluate | 675.00 | 2.75 | 1,856.25 | Billable |
| | evaluate and revise draft per DoJ isues and comments; | | | | |
| 5/26/2015 1855 | TShea Conference | 675.00 | 2.00 | 1,350.00 | Billable |
| | Conference with client re DOJ conference call and issues;;evlauate records re timing and invloicing; further review of dosc to prepare for conference call; | | | | |
| 5/27/2015 1856 | TShea Preparation | 675.00 | 4.00 | 2,700.00 | Billable |
| | Preparation for DoJ conf call; conf call wiht DoJ and J Raggio re voyage pro forma calculation and damages; | | | | |

8/11/2016                                          Nemirow Hu & Shea
9:44 AM                                            Pre-bill Worksheet                                Page     10

Raggio fca: (continued)

| Date<br>ID | Timekeeper<br>Task | Rate<br>Markup % | Hours<br>DNB Time | Amount<br>DNB Amt | Total |
|---|---|---|---|---|---|
| | draft responses re DoJ questions form conf call; | | | | |
| 6/1/2015<br>1857 | TShea<br>Conference<br>Conference call with J Raggio client to follow up re DoJ requests and<br>clarifications;<br>draft response to DoJ re requests; | 675.00 | 1.50 | 1,012.50 | Billable |
| 6/4/2015<br>1858 | TShea<br>Draft<br>Draft initial declaratrion for Fredd Isaksen; | 675.00 | 3.00 | 2,025.00 | Billable |
| 6/10/2015<br>1860 | TShea<br>Conference<br>Conference call with F Isaksen re DoJ isseus and draft declaration and<br>timing of invoices fron Jacinto; | 675.00 | 1.75 | 1,181.25 | Billable |
| 6/22/2015<br>1861 | TShea<br>evaluate<br>evaluatge DoJ commennts and documents re Sealift emails with Jacinto;<br>revise draft declaration; | 675.00 | 2.75 | 1,856.25 | Billable |
| 6/23/2015<br>1862 | TShea<br>Review<br>Review and revise draft declaration of Isaksen based on DoJ comments<br>and questions; | 675.00 | 2.00 | 1,350.00 | Billable |
| 6/24/2015<br>1863 | TShea<br>Conference<br>Conference with client Isaksen re draft and revise and convey to DoJ per<br>the tel conferencfe with Isaksen; | 675.00 | 1.25 | 843.75 | Billable |
| 6/26/2015<br>1864 | TShea<br>Conference<br>Conference with J Short AUSA re issues wiht draft and request for<br>revisions; Telephone call to Sealift re status and email revised draft; | 675.00 | 1.50 | 1,012.50 | Billable |
| 7/8/2015<br>1865 | TShea<br>Review<br>Review and revise draft declaration and conferring with F Isaksen; | 675.00 | 1.75 | 1,181.25 | Billable |
| 7/15/2015<br>1866 | TShea<br>Review<br>Review and tel con wiht F Isaksen with last round of comments;<br>finalize declaration; | 675.00 | 4.50 | 3,037.50 | Billable |
| 7/20/2015<br>1867 | TShea<br>Review<br>Review and confrom declaration to exhibits and send to F Isaksen for<br>execution; | 675.00 | 2.00 | 1,350.00 | Billable |

Raggio fca: (continued)

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 7/21/2015 1868 | TShea Review Review declaration wiht F Isaksen and make last revisions; | 675.00 | 0.50 | 337.50 | Billable |
| 3/10/2016 1869 | TShea evaluate review, evaluate and comments on Govt draft pretrial statement, voire dire, jury form, exhibitrs,; confer with J Short; | 675.00 | 5.00 | 3,375.00 | Billable |
| 3/15/2016 1870 | TShea Conference Conference with DoJ attys re stautus and role for assistance for relators; | 675.00 | 0.75 | 506.25 | Billable |
| 3/16/2016 1871 | TShea evaluate evlauate draft motions in limine and provide comments; | 675.00 | 1.75 | 1,181.25 | Billable |
| 3/17/2016 1872 | TShea evaluate evaluste and comment on govt pretrial statement, draft woire dire, and instructins adn motions in limine; comments and reaesrch re instructions; | 675.00 | 2.50 | 1,687.50 | Billable |
| 4/6/2016 1873 | TShea evaluate evaluate and comment on draft of DoJ settmlement with Jacinto and Seaboard; emails with DoJ and then with Troutman; | 675.00 | 1.25 | 843.75 | Billable |

| TOTAL | Billable Fees | | 228.66 | | $154,350.00 |
|---|---|---|---|---|---|

Total of billable expense slips                                                                    $0.00

---

## Calculation of Fees and Costs

| | Amount | Total |
|---|---|---|
| Fees Bill Arrangement: Slips By billing value on each slip. | | |
| Total of billable time slips | $154,350.00 | |
| Total of Fees (Time Charges) | | $154,350.00 |
| Total of Costs (Expense Charges) | | $0.00 |
| Total new charges | | $154,350.00 |
| New Balance Current | $154,350.00 | |

8/11/2016                                    Nemirow Hu & Shea
9:44 AM                                      Pre-bill Worksheet                                Page      12

Raggio fca: (continued)

|  | Amount | Total |
|---|---|---|
| Total New Balance |  | $154,350.00 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*<br>　　　JOHN RAGGIO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br><br>JACINTOPORT INTERNATIONAL, LLC,<br>and<br>SEABOARD MARINE, LTD.,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Civ. No. 1:10-cv-01908 (BJR)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Exhibit D to Declaration of Timothy B. Shea**

8/18/2016                               Nemirow Hu & Shea
9:45 AM                                 Pre-bill Worksheet                          Page    2

Nickname          Raggio fca | 35
Full Name
Address
Phone                                 Fax
Home                                  Other
In Ref To
Fees Arrg.        By billing value on each slip
Expense Arrg.     By billing value on each slip
Tax Profile       Exempt
Last bill
Last charge       4/6/2016
Last payment                          Amount      $0.00

| Date ID | Timekeeper Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 7/28/2016 1874 | TShea Draft | 675.00 | 2.50 | 1,687.50 | Billable |
| | Begin Draft fee petition; evaluate DC precedent re requirements; | | | | |
| 7/29/2016 1875 | TShea Draft | 675.00 | 5.25 | 3,543.75 | Billable |
| | Draft fee petition and evaluation of DC requirements; | | | | |
| 8/1/2016 1876 | TShea Draft | 675.00 | 1.75 | 1,181.25 | Billable |
| | Draft fee petition cont | | | | |
| 8/10/2016 1877 | TShea Draft | 675.00 | 1.75 | 1,181.25 | Billable |
| | Draft fee petition; Telephone call to expert Mills; Telephone call to Rahman; evauate revised drafts; | | | | |
| 8/11/2016 1878 | TShea Draft | 675.00 | 1.75 | 1,181.25 | Billable |
| | Draft revision with analysis of activities by year and further detail; | | | | |
| 8/17/2016 1879 | TShea Draft | 675.00 | 3.75 | 2,531.25 | Billable |
| | Draft TBS declaration in support; revise / conform per edits of Troutman; Telephone call to T Mills; | | | | |
| 8/18/2016 1880 | TShea Draft | 675.00 | 2.50 | 1,687.50 | Billable |
| | Draft and revise fee petition | | | | |